## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**TOP OF THE HILL, LLC**                                                    **PLAINTIFF**

**VERSUS**                                          **CAUSE NO.:** 1:19-cv-392-HSO-JCG

**PEARL RIVER COUNTY, MISSISSIPPI**                                  **DEFENDANT**

---

### COMPLAINT
### Jury Trial Demanded

---

Comes Now, Plaintiff, Top of the Hill, LLC ("TOTH"), by and through counsel of record and files this its Complaint against Pearl River County, Mississippi, ("the County") and would show unto this Honorable Court the following:

### PARTIES

1.      Plaintiff Top of the Hill, LLC is a company doing business in Mississippi.

2.      Defendant Pearl River County is a governmental entity organized under the laws of the State of Mississippi.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 133 1.

4.      Venue is proper under 28 U.S.C. § 1391 because the events or omissions giving rise to the claims alleged herein occurred in this district and because Pearl River County is located in this district.

### FACTUAL ALLEGATIONS

5.      In December 2017, Crossroads Treatment Center of Southern Mississippi, P.C.

1

("Crossroads") became a certified provider to individuals with substance use disorders in Mississippi.

6.      Crossroads contacted TOTH's owner, Robert Thigpen ("Thigpen"), regarding a space TOTH had available for rent near Picayune, Mississippi.

7.      However, the empty space that TOTH had available was only 1,200 square feet.

8.      Crossroads informed TOTH that it required more space to operate its treatment facility and represented that they would need at least 5,000 square feet.

9.      Thigpen, a member of Pearl River County, saw a need for a clinic such as Crossroads and sought out a location for Crossroads to operate a clinic.

10.     Based upon Crossroads' representation, TOTH purchased a property located at 10 Carrie Mitchell Road, Carriere, Mississippi 39426 ("Property").

11.     On February 21, 2018, Crossroads  entered into a lease agreement for the property with TOTH.

12.     On March 26, 2018, Thigpen informed the County of the lease agreement.

13.     Despite the Property being large enough to house Crossroads' clinic, the Property required remodeling.

14.     On March 29, 2018, Pearl River County issued a building, plumbing, and commercial permit for TOTH remodel of the Property.[1]

15.     On April 4, 2018, Pearl River County issued a building permit for the Property to "remodel existing bldg into clinic."[2]

---

[1]**Exhibit 1** - Building, Commercial, and Plumbing Permits

[2]**Exhibit 2** - Building Permit

16.     Also, on April 4, 2018, a representative from the County arrived at the Property to perform an inspection of the Property so that the remodeling work could be performed for the operation of Crossroads' treatment facility.

17.     On April 10, 2018, Pearl River County issued an electrical permit for the Property to "remodel existing bldg into clinic."[3]

18.     Word began to spread about TOTH's purchase of a building and renovations to assistance in the opening and operation of a treatment facility.

19.     On April 17, 2018, Thigpen and his wife began receiving threats on facebook.

20.     On April 11, 2018, the Board's administrative assistant contacted Thigpen requesting a closed  door meeting with the Board, County Attorney Joe Montgomery ("Montgomery"), and Crossroads on April 18, 2018 at 11 :00 a.m.

21.     On April 18, 2018, when Mr. Thigpen arrived, he was told by a bailiff that the "public meeting" was across the street.

22.     The Board never showed up for this closed  door meeting.

23.     On April 18, 2018, the County Board of Supervisors addressed public concerns over the Crossroads facility at the "public meeting," despite this matter not being on the meeting agenda. After going into executive session to discuss the issue, the Board returned at which time Montgomery instructed the public that the County would enforce a 1999 Ordinance ("Ordinance") to prevent Crossroads from opening.

24.     The Board refused to allow Thigpen or Crossroads' representative to speak at the meeting.

25.     The official minutes of the April 18, 2018 meeting do not mention Crossroads or the

---

[3]**Exhibit 3** - Electrical Permit

Ordinance.

26.   Following the April 18 meeting, Board Vice President Hudson Holliday stated: "We represent the public in the county .... I hope [Thigpen] sees the public opposition and will have second thought about it. Bringing drug addicts to the community is not the way to clean this place up."

27.   Supervisor Smith reportedly said the Board used the Ordinance to stop the center from being established, in part due to the public outcry. Smith said: "I'm real proud of the community, they did their homework and opened my eyes on the issue."

28.   The Ordinance makes it unlawful "to purchase, operate, maintain, and/or conduct in all the unincorporated areas of Pearl River County, Mississippi, any half-way home(s), prisons, rehabilitation, or other remedial businesses for the aid, help, training, rehabilitation, schooling, instruction, use, benefit, or advantage of current prisoners, ex-convicted prisoners, current or ex-drug addicts, current or ex-alcohol addicts, inmates, or patients, or any other rehabilitation or similar remedial business."

29.   Although Pearl River County is enforcing the Ordinance against Crossroads, the County has decided not to enforce the Ordinance against other clinics attempting to treat current and former addicts without using MAT, including several faith based clinics. Some of these treatment facilities include Jacob's Well and Damascus Road ("a Christ-centered addition recovery center") and Pine Grove Outreach Center.

30.   On April 19, 2018, Mr. Montgomery wrote Crossroads advising it that the County intended on enforcing the Ordinance prohibiting certain facilities in the unincorporated areas of the County and instructing Crossroads to cease and desist from further work on the Property.

4

31.    At the time of receipt of the cease and desist letter, the Property was 80% complete in its renovations which were scheduled to be completed by May 4, 2018.

32.    On information and belief, the derogatory statements made by County officials regarding the undesirability of individuals suffering from addiction and centers whose purpose is to assist such individuals were not based on any empirical, factual, or reliable information, but instead were based on stereotype, bias; prejudice, and/or unsubstantiated fear.

33.    The County's adoption nor its enforcement of the Ordinance was based on any empirical, factual, or reliable information, but instead was based on stereotype, bias, prejudice, and/or unsubstantiated fear.

34.    The County adopted and enforced the Ordinance based on a desire to discriminate against "qualified individuals with disabilities" within the meaning of 42 U.S.C. §§ 12102 and 12131(2) and 28 C.F.R. § 35.104.

35.    Based upon the County's selective and illegal enforcement of the Ordinance, Crossroads unilaterally terminated its lease with TOTH.

## COUNT I: INVERSE CONDEMNATION/TAKING

36.    TOTH incorporates by reference the allegations contained in the preceding paragraphs

37.    TOTH has a right of reasonable use of its Property.

38.    The County allowed permits to be issued for the renovation of the Property for the use of a treatment facility.

39.     Before renovations were completed for operation of a treatment facility, the County selectively enforced the Ordinance against TOTH preventing Crossroads from operating a treatment facility on the Property.

40.     As a result of the County's selective enforcement of the Ordinance and prevention of Crossroads' operation, Crossroads unilaterally terminated its lease with TOTH.

41.     At the time the County illegally enforced the Ordinance, the Property was 80% renovated for purposes of operating a treatment facility based upon Crossroads' requirements.

42.     Because of the County's selective enforcement of the Ordinance and prevention of Crossroads' (and other treatment facilities) operation of a treatment facility on the Property, the County has caused the Property to diminish in value.

43.     The County's interference with TOTH and Crossroad's lease interfered with TOTH's use of its Property. The County's actions, in practice, constitute a taking of the Property without due compensation, even if it constitutes a "partial" or "temporary taking."

44.     Further, the County has deprived TOTH of all economic use of the Property by virtue of its actions.

45.     The County's actions rise to a taking in violation of the 5th and 14th Amendments of the United States Constitution and Article 3 Section 17 and Article 7 Section 190 of the Mississippi Constitution. Therefore, the County is liable to Plaintiffs for all damages proven at trial.

## COUNT II: ESTOPPEL AND WAIVER

46.     TOTH incorporates by reference the allegations contained in the preceding paragraphs.

47.     TOTH advised the County that it had a lease agreement with Crossroads to operate a treatment facility on the Property.

48.     Subsequently, the County issued permits for the Property for the renovation of the Property for the operation of a treatment facility.

49.   TOTH relied upon the County's issuance of permits and representations to begin renovations to the Property for the operation of a treatment facility.

50.   Despite the County's knowledge of the lease between Crossroads, and the County's issuance of permits for the operation of a treatment facility, County elected to selectively enforce the Ordinance against TOTH and Crossroads and prevented Crossroads from operating a treatment facility on the Property.

51.   Because of the County's actions, Crossroads unilaterally terminated its lease with TOTH.

52.   Because of the County's consent for Crossroads' operation of a treatment facility on the Property by issuing permits, the County is barred from disclaiming the damages of TOTH arising from the County's illegal enforcement of the Ordinance against TOTH and Crossroads.

## COUNT III: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

53.   TOTH incorporates by reference the allegations contained in the preceding paragraphs.

54.   The County actions described above, including its adoption and enforcement of the Ordinance, both facially and as-applied:

a.   Constitute discrimination in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. Part 35;

b.   Exclude individuals with disabilities from participation in and deny them the benefits of the services, programs, or activities of a public entity on the basis of disability, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(a);

c.   Afford qualified individuals with disabilities an opportunity to participate in or

benefit from the services of a public entity that are not equal to those afforded others, in violations of Title II of the ADA, 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(l )(ii);

d.   Otherwise limit a qualified individual with a disability in the enjoyment of any right1 privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(l)(vii);

e.   Fail to make reasonable modifications in policies, practices, or procedures necessary to avoid discrimination on the basis of disability, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(7);

f.   Utilize methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(3); and

g.   Exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association, in violation of Title ll of the ADA, 42 U .S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(g).

55.   The County acted intentionally, willfully, and in disregard for the rights of others in adopting and enforcing the Ordinance.

56.   As a result of the County's conduct and its adoption and enforcement of the Ordinance, qualified individuals with disabilities and those who associate with qualified individuals with

8

disabilities, including Crossroads and TOTH, have suffered damages and injuries.

## COUNT IV: VIOLATION OF SUBSTANTIVE DUE PROCESS

57.   TOTH incorporates by reference the allegations contained in the preceding paragraphs.

58.   The County's adoption and enforcement of the Ordinance, both facially and as applied, were and are clearly arbitrary, capricious, unreasonable, illegal, and discriminatory, and have no substantial relation to the public health, safety, morals, or general welfare. The adoption and enforcement of the Ordinance are not rationally related to any legitimate government interest, and there is no conceivable legitimate rational basis for the Ordinance's adoption and enforcement. Pearl River County adopted and enforced the Ordinance for the specific purpose of discriminating against qualified individuals with disabilities and those who associate with qualified individuals with disabilities. Pearl River County's adoption and enforcement of the Ordinance, both facially and as applied, violate TOTH's substantive due process rights under the Fifth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

59.   The enforcement of the Ordinance was used to target TOTH, Thigpen, and Crossroads and those affected by addiction and deprived TOTH of its rights under the law.

60.   As a direct and proximate result of the County's adoption and enforcement of the Ordinance, TOTH has suffered and will continue to suffer economic damages, and is entitled to recovery in an amount to be determined by a jury and the Court.

61.   Moreover, TOTH is entitled to punitive damages on its substantive due process claim as the County's conduct involves reckless or callous indifference to TOTH's federally protected rights, and/or it is motivated by evil motive or intent. *See Smith v.    Wade,* 461 U.S. 30, 47-49

(1983).

62.     TOTH is also entitled to a declaration from the Court recognizing the foregoing violation of its right to substantive due process under the United States Constitution based on the adoption and enforcement of the Ordinance.

## COUNT V: PROCEDURAL DUE PROCESS

63.     TOTH incorporates by reference the allegations contained in the preceding paragraphs.

64.     TOTH had a property interest arising from its ownership of the Property as well as a property interest in the contract with Crossroads.

65.     The County applied the Ordinance to TOTH and Crossroads, effectively revoking its previously issued permits, without providing TOTH notice, an opportunity to be heard, or a meaningful opportunity to contest the Ordinance's application.

66.     The enforcement of the Ordinance and the de facto revocation of the County's permits without adequate notice violated TOTH procedural due process rights under the Fifth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983. See *Bowlby v, City of Aberdeen, Miss.*, 681 F.3d 215 (5th Cir. 2012).

67.     The deprivation of TOTH's rights secured to it by the Fifth and Fourteenth Amendments to the United States Constitution was inflicted under color of state law and pursuant to official Pearl River County policy.

68.     As a direct and proximate cause of the County's violations of TOTH's procedural due process rights, TOTH has suffered and will continue to suffer significant economic damages, and is entitled to recovery in an amount to be determined by a jury and the Court.

69.     Moreover, TOTH is entitled to punitive damages on its procedural due process claim as the

County's conduct involves reckless or callous indifference to TOTH's federally protected rights, and/or it is motivated by evil motive or intent. See *Smith v. Wade*, 461 U.S. 30, 47-49 (1983).

70.    TOTh is also entitled to a declaration from the Court recognizing the foregoing violation of its right to procedural due process under the United States Constitution based on the County's selective enforcement of the Ordinance.

## COUNT VI: EQUAL PROTECTION

71.    TOTH incorporates by reference the allegations contained in the preceding paragraphs.

72.    Pearl River County's adoption and enforcement of the Ordinance was and is unreasonable, discriminatory, arbitrary, and capricious and not reasonably related to any legitimate state interest or to the public health, safety, morals, or general welfare.

73.    The County's adoption and enforcement of the Ordinance was and is based on generalized negative stereotypes, attitudes, prejudices, and fears unsubstantiated by any legitimate, rational basis.

74.    The County's adoption and enforcement of the Ordinance was and is based on unconstitutional classifications that treat MAT treatment facilities dissimilarly from other facilities serving individuals suffering from addiction. The County has not applied the Ordinance to several non-MAT facilities serving individuals with addictions, including several faith-based treatment clinics located in the unincorporated areas of Pearl River County.

75.    The County's adoption and enforcement of the Ordinance was and is based on unconstitutional classifications that treat individuals suffering from addiction, and entities

11

serving such individuals, dissimilarly from individuals suffering from other disabilities, such as diabetes or heart disease, and entities serving such individuals.

76.     The County's adoption and enforcement of the Ordinance was and is motivated by purposeful discrimination against individuals suffering from drug addiction and those who associate with such individuals.

77.     The County's adoption and enforcement of the Ordinance, both facially and as applied, deny TOTH equal protection under the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.

78.     The deprivation of TOTH's equal protection rights secured to it by the Fourteenth Amendment to the United States Constitution was inflicted under color of state law and pursuant to official Pearl River County policy.

79.     As a direct and proximate cause of the County's adoption and enforcement of the Ordinance, TOTH has suffered and will continue to suffer economic damages, and is entitled to recovery in an amount to be determined by a jury and the Court.

80.     Moreover, TOTH is entitled to punitive damages on its equal protection claim as the County's conduct involves reckless or callous indifference to TOTH's federally protected rights, and/or it is motivated by evil motive or intent. See *Smilh v. Wade*, 461 U.S. 30, 47-49 (1983).

81.     TOTH is also entitled to a declaration from the Court recognizing the foregoing violation of its right to equal protection under the United States Constitution based on the adoption and enforcement of the Ordinance, TOTH is further entitled to injunctive relief prohibiting the County from enforcing the Ordinance against it.

WHEREFORE, PREMISES CONSIDERED, TOTH requests that the Court enter an order:

a.    Declaring that the County's actions, including its adoption and enforcement of the Ordinance, violate the Americans with Disabilities Act and its implementing regulations and TOTH's constitutional rights to substantive due process, procedural due process, and equal protection;

b.    Enjoining the County, its officers, employees, agents, successors, and all other persons in active concert or participation with it, from enforcing the Ordinance against TOTH or in any manner discriminating against persons with disabilities or TOTH;

c.    Requiring the County to immediately repeal the Ordinance;

d.    Requiring the County to take all affirmative steps to ensure its compliance with the Americans with Disabilities Act, including steps necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate to the extent practicable the effects of its unlawful practices as described herein;

e.    Requiring the County to take all affirmative steps to restore, as nearly as practicable, the victims of the County's unlawful practices to the position they would have been in but for the County's discriminatory conduct;

f.    Awarding monetary damages pursuant to the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35;

g.    Awarding monetary damages pursuant to 42 U.S.C. § 1983 for the County's violations of TOTH's constitutional rights;

h.    Awarding reasonable costs and attorneys' fees pursuant to 42 U.S.C. §§ 1983, 1988,

13

and 12205;

i.     Awarding prejudgment and post judgment interest;

j.     Awarding punitive damages; and

k.     Awarding such further relief as the Court deems appropriate.

Respectfully submitted this _12th_ day of July, 2019.


                                        **TOP OF THE HILL, LLC,**
                                        **Plaintiff**


                                        _____
                                        SAMUEL S. McHARD, MSB #100295


SAMUEL S. McHARD, MSB #100295
NICHOLAS A. PUCKETT, MSB#105599
P. MANION ANDERSON, MSB #104250
McHARD, McHARD, ANDERSON & ASSOCIATES, PLLC
140 MAYFAIR ROAD, SUITE 1500
HATTIESBURG, MS 39402
T: 601-450-1715
F: 601-450-1719
E:     manderson@mchardlaw.com
smchard@mchardlaw.com